# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

LEOVIGILDO ESPINOZA,

    Plaintiff,

v.                                  Case No. 6:15-cv-1923-Orl-37GJK

BOBBY HARRELSON; JOSHUA SANTOS; CONSTANTINE PROCOS; and CITY OF DELAND,

    Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants', Constantine Procos and Joshua Santos, Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (Doc. 29), filed January 15, 2016;

2. Plaintiff's Response to Defendant's [sic] Constantine Procos and Joshua Santos [sic] Motion to Dismiss Plaintiff's Complaint (Doc. 44), filed March 11, 2016;[1]

---

[1] As an initial matter, Plaintiff's response was grossly untimely. Plaintiff's response was due on February 1, 2016. *See* Local Rule 3.01(b) (allocating fourteen days to respond); Fed. R. Civ. P. 6(d) (allocating an additional three days to respond). Without any justification, Plaintiff responded more than one month after the deadline. (Doc. 44 ("**First Response**").) Consequently, the Court did not consider the First Response in ruling on the Motion. Going forward, counsel is warned that failure to abide by the deadlines set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's Case Management and Scheduling Orders may result in the striking of late filings or the consideration of motions with late responses as unopposed.

   3. Defendant City of DeLand's Motion to Dismiss Count IV of the First Amended Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 42), filed February 12, 2016; and

   4. Plaintiff's Response to Defendant City of DeLand [sic] Motion to Dismiss Plaintiff's Complaint (Doc. 46), filed March 18, 2016.[2]

Upon consideration, the Court finds that the motions are due to be granted.

## BACKGROUND[3]

Plaintiff Leovigildo Espinoza ("**Plaintiff**") was shot by a member of the DeLand Police Department ("**DPD**") while in the backyard of a residence[4] on January 22, 2012. (Doc. 20, ¶¶ 10, 12, 16.) Plaintiff claims that the shooting is actionable under 42 U.S.C. § 1983. (*See* Doc. 1.)

Prior to the shooting, Connie Bond ("**Ms. Bond**") placed a service call to the DPD.[5] (Doc. 20, ¶ 10.) In response, three DPD officers—Bobby Harrelson ("**Officer Harrelson**"), Constantine Procos ("**Officer Procos**"), and Joshua Santos ("**Officer Santos**") (collectively, "**the Officers**")—approached the residence located directly behind Ms. Bond's home ("**the Residence**"). (*Id.* ¶¶ 11, 12.) At the time of Ms. Bond's service call, Plaintiff and his friends—Javier Perez ("**Mr. Perez**") and Arnulfo Mendoza—(collectively, "**the Men**") were in the backyard of the Residence. (*Id.* ¶ 12.)

---

[2] *See supra* note 1. Plaintiff's response was due on February 29, 2016, yet Plaintiff responded more than two weeks after the deadline. (Doc. 46 ("**Second Response**").) The Court did not consider the Second Response in ruling on the Motion.

[3] The following facts are taken from Plaintiff's Amended Complaint (Doc. 20), taken as true, and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[4] Plaintiff did not state who owned the residence.

[5] Plaintiff did not allege why Ms. Bond called the DPD.

2

Prior to the Officers' arrival at the Residence, the Men used a BB gun ("**BB Gun**") to shoot an orange in the backyard. (*Id.* ¶ 13.) While the Officers were at the Residence, none of the Men held the BB Gun or aimed it at any person; rather, the BB Gun remained on top of an appliance in the backyard. (*Id.* ¶¶ 13, 14.) Officers Procos and Santos ("**the Standby Officers**") observed the BB Gun lying on top of the appliance and never saw Plaintiff lift the BB Gun or point it at any individual. (*Id.* ¶ 17.)

Upon their arrival at the Residence, the Officers positioned themselves behind a wooden stockade fence at the Residence's rear perimeter. (*Id.* ¶ 15.) The Officers did not announce their presence to Plaintiff or issue any verbal orders or warnings to Plaintiff. (*Id.* ¶ 23.) Officer Harrelson "fired numerous shots" at Plaintiff through an opening in the fence, "striking" Plaintiff and Mr. Perez ("**the Shooting**"). (*Id.* ¶ 16.) Plaintiff underwent emergency surgery for numerous injuries to his right hand, jaw, and left shoulder. (*Id.* ¶ 18.) Additionally, the Shooting resulted in injuries to a neighbor's two-month-old baby and dog. (*Id.* ¶ 19.)

At the time of the Shooting, Plaintiff was unarmed and did not pose a "significant threat of death or serious physical injury" to the Officers or the public. (*Id.* ¶ 24.) The Standby Officers "failed to take any action" to intervene in the Shooting, despite being in "close proximity" to Officer Harrelson and having "ample means and opportunity" to take such action. (*Id.* ¶ 17.) Subsequently, the Officers arrested Plaintiff in the front yard of the Residence. (*Id.* ¶ 20.) The Officers caused Plaintiff and Mr. Perez to be falsely charged with aggravated assault on a law enforcement officer. (*Id.* ¶ 22.) Although Plaintiff does not state how, those criminal charges were ultimately resolved. (*See id.*)

Based on the foregoing, Plaintiff filed a civil rights action against the Officers and

the City of DeLand ("**City**") pursuant to § 1983. (*See* Doc. 1.) In his Amended Complaint (hereinafter, "**Complaint**"), Plaintiff asserts § 1983 claims for excessive force against each Officer in their individual capacities (Counts I–III) and a § 1983 claim for municipal liability against the City (Count IV). (Doc. 20.) Officer Harrelson answered Count I of the Complaint (Doc. 31), and the Standby Officers moved to dismiss Counts II and III of the Complaint on grounds of qualified immunity and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 29.) The City also moved to dismiss Count IV of the Complaint pursuant to Rule 12(b)(6) on the grounds that Plaintiff failed to sufficiently state a *Monell* claim for municipal liability. (Doc. 42.) The motions are ripe for adjudication.

## STANDARDS

**I.     Pleading Standards**

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to the "well-pleaded factual allegations." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

**II.    42 U.S.C. § 1983**

Section 1983 provides aggrieved persons with a procedural mechanism to seek

redress for constitutional violations that are committed while a defendant is acting under color of state law. 42 U.S.C. § 1983. Acts performed by law enforcement officers—even if illegal or unauthorized—are considered to have been performed under color of state law so long as the acts are done in the defendant's capacity as a law enforcement officer. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). However, a § 1983 claim will fail if the plaintiff does not properly allege a constitutional violation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119 (1992) ("Although [§ 1983] provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law.").

## DISCUSSION

I.  **Excessive Force Claims Against Officer Procos and Officer Santos**

In Counts II and III, Plaintiff asserts identical claims against the Standby Officers for excessive force based on a failure-to-intervene theory. (Doc. 20, ¶¶ 36–49.) Contending that they are entitled to qualified immunity, the Standby Officers move for dismissal of Counts II and III because Plaintiff failed to sufficiently allege a constitutional violation. (Doc. 29, p. 4.) As a threshold matter, the Court determines that Plaintiff failed to adequately plead a constitutional violation as to the Standby Officers; thus, no cognizable § 1983 claim exists against them.

An excessive force claim is analyzed under the Fourth Amendment's objective reasonableness standard. *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015). The reasonableness inquiry looks to whether an officer's actions are objectively reasonable in light of the facts and circumstances facing the officer. *Id.* Courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake" under the specific facts of the situation. *Id.*

An officer need not personally use force to be found liable under a § 1983 claim for excessive force. *See id.* at 1295. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force" can be found liable under a failure-to-intervene theory. *Id.* However, such liability "only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *compare Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir. 1998) (finding no liability absent evidence that the defendant "had an opportunity to observe or halt" the excessive force), *with Salvato*, 790 F.3d at 1295 (holding that the bystander officer was "in a position to intervene," and thus, not entitled to qualified immunity when a fellow officer engaged in excessive force). "Whether the [bystander] officer had time to intervene is a relevant consideration." *Marantes v. Miami-Dade Cty.*, No. 15-13333, 2016 WL 1696838, at *6 (11th Cir. Apr. 28, 2016); *see also Priester*, 208 F.3d at 925 (vacating the district court's grant of judgment as a matter of law in favor of the defendant police officer on a failure-to-intervene claim upon determining that a reasonable juror could conclude that the defendant "had time to intervene" to stop the excessive force).

Plaintiff alleges that the Standby Officers: (1) were in "such close physical proximity" to Officer Harrelson during the Shooting that they were in a "position to intervene and chose not to do so" (Doc. 20, ¶¶ 41, 48); and (2) had "ample means and opportunity" to take action to stop the Shooting (*id.* ¶ 17). The Standby Officers counter that Plaintiff's Complaint lacks factual support to demonstrate that they were in a position

to see any force used by Officer Harrelson or that they had ample time, justification, or ability to intervene. (Doc. 29, p. 7.)

Although Plaintiff sufficiently alleges that the Standby Officers were close enough to Officer Harrelson to intervene in the Shooting, Plaintiff fails to allege any plausible facts that the Standby Officers had the opportunity to observe and halt the Shooting. *See Ensley*, 142 F.3d at 1407–08. Notably, the Complaint provides no factual allegations concerning: (1) the duration of the Shooting; (2) any circumstances that would give rise to an inference that the Shooting was about to occur; (3) whether the Standby Officers observed the Shooting as it occurred; or (4) what, if anything, the Standby Officers might have done to influence the decision of Officer Harrelson to fire his weapon. The absence of such factual allegations is fatal to Plaintiff's failure-to-intervene claims. *See id.* at 1408 (granting summary judgment for the bystander officer where the plaintiffs offered no evidence that "[the officer] could have observed or did observe excessive force" and had the opportunity to intervene). Importantly, Plaintiff's failure to allege the duration of the Shooting, as well as any facts showing that the Shooting was imminent, prevents the Court from drawing the necessary inference that the Standby Officers had the time "to issue a verbal command or physically prevent" the Shooting. *See Marantes*, 2016 WL 1696838, at *6 (holding that the excessive force happened in such "rapid succession without warning" that it left the bystander officers with "insufficient time" to intervene); *see also Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (recognizing that the plaintiff's failure to allege facts indicating the duration of the purported constitutional violation, *inter alia*, was "fatal" to the plaintiff's failure-to-intervene claim). Thus, Counts II and III are due to be dismissed.

## II.   Municipal Liability (*Monell*) Claim Against the City of DeLand

In Count IV, Plaintiff asserts a claim against the City for municipal liability. (Doc. 20, ¶¶ 50–58.) Arguing that the Complaint lacks sufficient factual allegations to state a plausible *Monell* claim, the City seeks dismissal. (Doc. 42, pp. 2–3.) Upon consideration, the Court agrees that Count IV is due to be dismissed.

"[T]o impose § 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Marantes*, 2016 WL 1696838, at *6 (finding that as to the third element, "the custom or policy must be the 'moving force' behind the constitutional deprivation") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Here, Plaintiff asserts the existence of an unofficial custom or practice within the City of "fail[ing] to adequately train, supervise, and discipline" DPD officers, which he contends constitutes deliberate indifference. (*See* Doc. 20, ¶¶ 53–54.) In particular, Plaintiff alleges that: (1) the City's police officers have committed constitutional violations upon the City's citizens on numerous occasions (*id.* ¶ 51); and (2) the City has participated in a "widespread practice of condoning the excessive use of force by its [o]fficers" (*id.* ¶ 56). The City contends that dismissal is warranted for two alternative reasons: (1) Plaintiff failed to establish that his constitutional rights were violated due to a policy or custom adopted by the City (Doc. 42, p. 5); or (2) Plaintiff failed to allege a constitutional violation against the Standby Officers, thus resulting in no actionable § 1983 claim against

the City (*id.* at 9–10).[6]

Ordinarily, a plaintiff must point to "[a] pattern of similar constitutional violations by untrained employees" to demonstrate deliberate indifference for failure to train ("**General Rule**"). *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)). Thus, a single incident of unconstitutional activity is generally insufficient to impose liability against a municipality. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). However, the U.S. Supreme Court has "hypothesized" that in rare circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations" ("**Patently Obvious Exception**"). *See Connick*, 563 U.S. at 63–64 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). In such an unusual case, a city could be held liable the first time such patently obvious consequences occur. *See id.*

Plaintiff's conclusory allegations concerning the City's failure to train are insufficient to state a claim under either of these theories.[7] First, with respect to the Patently Obvious Exception, the Complaint is devoid of facts to demonstrate that the City

---

[6] Although the Court finds that the City's motion is due to be granted on the basis of its first argument, the Court recognizes that the City's potential liability under § 1983 was not solely contingent upon a constitutional violation committed by the Standby Officers; rather, assuming that Plaintiff was able to plead the remaining elements of a *Monell* claim, the City could have been subject to municipal liability based upon purported constitutional violations committed by Officer Harrelson.

[7] While there is some historic precedent for holding that a conclusory allegation that a county "failed to effectively train [the defendant police officer]" is sufficient to withstand a Rule 12(b)(6) motion, *see Farred v. Hicks*, 915 F.2d 1530, 1533 (11th Cir. 1990), the holding predates the Supreme Court's decisions in *Iqbal* and *Twombly*, which pronounced the current prevailing standards for evaluating a Rule 12(b)(6) dismissal. Further, the plaintiff in *Farred* submitted the complaint without the assistance of counsel, resulting in the court construing the complaint liberally. *Id.*

"failed to adequately train, supervise, and discipline" its police officers (*see* Doc. 20, ¶ 53), as Plaintiff does not point to any obvious training program that the DPD failed to institute or instituted inadequately, *see Cooper v. City of Starke, Fla.*, No. 3:10-cv-280-J-34MCR, 2011 WL 1100142, at *8 (M.D. Fla. Mar. 23, 2011) (granting the city's motion to dismiss the plaintiffs' failure-to-train claim because "[p]laintiffs [did] not offer any *facts* demonstrating how [such] training was inadequate or that the need for additional training was obvious"). Moreover, under the General Rule, although Plaintiff alleges that the City "continues to internally clear" its police officers of liability for constitutional violations, despite the initiation of multiple civil lawsuits involving the purported use of excessive force (*see* Doc. 20, ¶ 57), the specific instances cited by Plaintiff fail to support a finding of a custom or practice within the purview of *Monell*. Specifically, the first instance occurred nearly nineteen months after the Shooting, and the second instance arose from the same incident underlying Plaintiff's excessive force claims in the Complaint. Neither of these are adequate because "contemporaneous or subsequent conduct cannot establish a pattern of violations." *See Connick*, 563 U.S. at 63 n.7.[8] As such, the Court finds that Count IV is due to be dismissed.[9]

---

[8] Plaintiff does identify one prior incident—that Officer Harrelson previously violated a DPD policy when he used a taser twelve times in twelve minutes on a nineteen-year-old burglary suspect. (Doc. 20, ¶ 28.) However, this alleged incident of excessive force, even when combined with Plaintiff's allegations concerning the Shooting, is insufficient to support a finding that the City had a custom or practice of condoning excessive force. *See Marantes*, 2016 WL 1696838, at *7 (holding that two incidents of purported excessive force—the plaintiff's arrest and a homicide involving the same officers who arrested the plaintiff—"do not show that the County had a 'longstanding and widespread practice' of encouraging excessive force" (quoting *Craig*, 643 F.3d at 1310)).

[9] Notably, Plaintiff also fails to assert any factual allegations that the City's failure to train its police officers was the "moving force" behind Officer Harrelson's purported use of excessive force against Plaintiff. *See Monell*, 436 U.S. at 694.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants', Constantine Procos and Joshua Santos, Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law (Doc. 29) is **GRANTED**.

2. Defendant City of DeLand's Motion to Dismiss Count IV of the First Amended Complaint with Prejudice and Incorporated Memorandum of Law (Doc. 42) is **GRANTED**.

3. Counts II, III, and IV are **DISMISSED WITH PREJUDICE.**

4. The Clerk is **DIRECTED** to terminate Defendants Joshua Santos, Constantine Procos, and the City of DeLand as Defendants in this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 21, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record